UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL C. KUCZI,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>  Defendant. | NO. C16-1139-TSZ-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Michael C. Kuczi appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-one year old man with a high school education and some college. Administrative Record ("AR") at 41-42. His most

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

REPORT AND RECOMMENDATION - 1

recent work experience includes a four-day attempt to deliver newspapers, and several months working part-time making medical marijuana deliveries. AR at 42-45. Plaintiff was last gainfully employed in 1996. AR at 45.[2]

On June 26, 2013, plaintiff filed a claim for SSI payments. AR at 219. On July 12, 2013, he filed an application for DIB, alleging an onset date of January 1, 1997. AR at 213, 219. However, during the administrative hearing, plaintiff amended his alleged onset date to the June 26, 2013 filing date of the SSI application, and dismissed his Title II application. AR at 37. Plaintiff asserts that he is disabled due to head injury, headaches, back pain, hearing impairment, and depression. AR at 96.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 145, 152, 161, 166. Plaintiff requested a hearing, which took place on October 21, 2014. AR at 33-93. On January 16, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 13-27. Plaintiff's request for review was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On September 27, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 5.

II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[2] He also bought and sold game cards from 1991 until 2007, which he testified generated about $4,000 total in income. AR at 46-47.

REPORT AND RECOMMENDATION - 2

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Kuczi bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On January 16, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since January 1, 1997, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disk disease, C7 foraminal stenosis with osteophyte and disc protrusion, complex disk protrusion at C6-7, headaches, depression, anxiety disorder, personality disorder with narcissistic traits, and rule out Asperger's syndrome.

REPORT AND RECOMMENDATION - 5

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally lift and/or carry twenty pounds and frequently ten pounds. The claimant can sit, stand and/or walk six hours out of an eight-hour workday. The claimant can frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl. The claimant can occasionally climb ladders, ropes or scaffolds. The claimant is limited to occasional reaching overhead bilaterally. The claimant must avoid concentrated exposure to the extreme cold, vibration and hazards. The claimant can carry out short, simple and detailed instructions. The claimant cannot have public contact.

6. The claimant has no past relevant work.

7. The claimant was born on XXXXX, 1973 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[4]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 1997, through the date of this decision.

AR at 18-27.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence?

2. Did the ALJ err in evaluating plaintiff's testimony?

3. Did the ALJ err in assessing plaintiff's RFC?

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

Dkt. 11 at 2; Dkt. 12 at 1.

## VII. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Opinion Evidence

#### 1. Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

REPORT AND RECOMMENDATION - 7

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2. David Jarvis, M.D.

David Jarvis, M.D. performed a psychiatric evaluation on October 8, 2013. AR at 359-67. Dr. Jarvis diagnosed plaintiff with anxiety disorder NOS with social and obsessive factors, depression NOS, personality disorder with narcissistic traits, and assigned a GAF score of 50.[5] AR at 366. Dr. Jarvis noted that plaintiff's hygiene was within normal limits, he walked with a normal gait, and sat comfortably during the assessment without pain behavior. AR at 365. His mood was normal, he made good eye contact, and was cooperative. AR at 365. Plaintiff could

---

[5] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

recite all of three unrelated words after a delay and he reported seven digit spans forward and four backward. AR at 365. Plaintiff recalled current information, including names and places. AR at 366. However, Dr. Jarvis also noted that plaintiff "seemed unusually pleased and happy to be talking about himself in the interview and seems to have a narcissistic personality style, but without the feature of exploititiveness (sic). He notes that he 'does not fit into society very well.'" AR at 366. Dr. Jarvis opined that the plaintiff's combination of impairments including "low moods and motivation, impatience with others, apparent entitlement issues, and high disability conviction, create severe limitations in his motivation to seek and persist with employment, and in the ability/likelihood that he would relate appropriately to others, or respond appropriately to or tolerate the pressures and expectations of a normal work setting." AR at 367.

The ALJ assigned Dr. Jarvis' opinion "little weight" for the following reasons:

> Dr. Jarvis appears to state that a disability conviction is sufficient to prevent the claimant from working. However, the claimant's lack of motivation indicates reluctance to work, as reflected in his poor work history. Further, he has clearly made lifestyle choices to care for her parents, a non-disability reason for not working. Further, the mental status examination was largely unremarkable. Although the claimant expressed significant problems with ongoing tinnitus to Dr. Jarvis, this is out of the expertise of Dr. Jarvis, and in any event, a hearing examination was unremarkable and treatment for this impairment was very conservative. I give the GAF score limited weight because it does not provide a reliable longitudinal picture of the claimant's mental functionality for a disability analysis and is not supported by the record as a whole.

AR at 24.

The ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Jarvis' opinion. As a threshold matter, the ALJ characterized Dr. Jarvis' opinion as relying upon plaintiff's disability conviction as a "sufficient" reason to prevent the claimant from working, and then the ALJ rejected this conclusion. AR at 24. However, this is a straw man argument, because it is an inaccurate characterization of Dr.

REPORT AND RECOMMENDATION - 9

Jarvis' opinion. Dr. Jarvis opined that plaintiff had a "combination" of impairments that would result in "severe limitations" in engaging in employment. Dr. Jarvis cited plaintiff's disability conviction as one factor in addition to his "anxiety, depressive [disorder], and especially his narcissistic disorder, with low moods and motivation, impatience with others, [and] apparent entitlement issues." AR at 367. Dr. Jarvis never implied that plaintiff's disability conviction, without more, was sufficient to prevent plaintiff from working.

In addition, the ALJ did not cite any evidence in the record demonstrating that plaintiff "chose" a lifestyle of caring for his elderly parents over working, or explain how the fact that plaintiff sometimes assisted his parents in exchange for living in their basement demonstrated his ability to maintain gainful employment in a competitive work setting. Indeed, plaintiff testified during the hearing that "even before I had all these problems in my life [with his parents] I wasn't able to find a job that would work for me or that I could work for." AR at 57. At the time of the hearing, plaintiff was also being charged with assaulting his elderly father and was not in contact with him. AR at 38-39. Without more, plaintiff's attempts to care for his elderly parents did not provide a basis for the ALJ to reject Dr. Jarvis' opinion.

The Court is also not persuaded by the ALJ's conclusory assertion that "the mental status examination was largely unremarkable." AR at 24. Although plaintiff performed well on many aspects of the exam, there were also several remarkable findings that appear fully consistent with Dr. Jarvis' assessed limitations – particularly with respect to plaintiff's social limitations and narcissistic personality disorder. For example, Dr. Jarvis noted that although plaintiff's mood and affect were normal and congruent, "he laughed at some unfunny things. He seemed to thoroughly enjoy the opportunity to talk about himself." AR at 365. Dr. Jarvis also documented plaintiff's inappropriate laughter throughout the clinical interview, which bears on plaintiff's ability to relate appropriately to others. AR at 359-64. Dr. Jarvis also

REPORT AND RECOMMENDATION - 10

noted that plaintiff displayed a "circumstantial, tangential, run-on" communication style. AR at 365.

Finally, the fact that plaintiff had expressed significant problems with ongoing tinnitus to Dr. Jarvis and "this is out of the expertise of Dr. Jarvis" was not a specific and legitimate reason for the ALJ to reject Dr. Jarvis' opinion regarding plaintiff's social functioning. AR at 24. Dr. Jarvis did not rely on plaintiff's tinnitus as a basis for assessing severe limitations in his ability to work. Rather, he noted that plaintiff "reports chronic neck problems, headaches, tinnitus, and depression and anxiety," but found that "possible limitations arising from physical complaints are beyond the scope of this evaluation, and must be addressed by the appropriate medical specialists." AR at 366-67. As noted above, Dr. Jarvis based his opinion on plaintiff's "combination of anxiety, depressive, and especially his narcissistic disorder[.]" AR at 367.[6]

Accordingly, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Jarvis' opinion that plaintiff has severe limitations in his ability to seek and persist in employment, relate appropriately to others, and respond appropriately to or tolerate the pressures and expectations of a normal work setting. AR at 367. This case must be remanded for further administrative proceedings for the ALJ to reevaluate Dr. Jarvis' opinion and provide legally sufficient reasons for rejecting it, if such a conclusion is warranted.

---

[6] The ALJ's rejection of Dr. Jarvis' GAF score is not a basis to affirm the ALJ's treatment of Dr. Jarvis' opinion, as plaintiff does not claim that the GAF score establishes disability. Dkt. 11 at 7. The Court does note, however, that the ALJ mischaracterized the GAF score of 50 as indicating "mild to moderate symptoms," AR at 23, when in fact it indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

### 3. Jan Kouzes, Ed.D.

On July 30, 2014, examining psychologist Jan Kouzes, Ed.D. completed a psychiatric/psychological evaluation for DSHS. AR at 406-10. Dr. Kouzes diagnosed plaintiff with Bipolar I Disorder (most recent episode manic, moderate), and "rule out" autism spectrum disorder. AR at 408. With respect to plaintiff's potential diagnosis of Asperger Disorder, Dr. Kouzes noted that "history that supports this diagnosis would include long term problems with social skills, difficulty interacting with others, communications difficulties, trouble understanding others' communications, difficulty making inferences, limited range of interest." AR at 407. With respect to bipolar disorder, she noted that plaintiff "evidenced problems with mood dysregulation including inflated self-esteem at several points, rapid, somewhat pressured speech. At various times in the interview he appeared to be agitated and/or irritated." AR at 407. In addition, Dr. Kouzes noted plaintiff's self-report "that at times he experiences an increased drive to perform or achieve goals followed by giving up, feelings of defeat. He noted difficulties with interactions with others. There was evidence of grandiosity of thinking." AR at 407. She diagnosed a GAF score of 55.[7] AR at 408.

With respect to plaintiff's functional limitations, Dr. Kouzes found that plaintiff had marked limitations in his ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (2) ask simple questions or request assistance; (3) communicate or perform effectively in a work setting; (4) complete a normal work day and work week without interruptions from psychological symptoms; (5) maintain appropriate behavior in a work setting; and (6) set realistic goals and plan independently. AR at 408-09. Dr. Kouzes opined that plaintiff may

---

[7] A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."

REPORT AND RECOMMENDATION - 12

benefit from assistance from DVR in the future, and "[h]e would most likely benefit from a mentored, flexible and supportive job site." AR at 409.

The ALJ stated that she gave little weight to Dr. Kouzes' assessments because "the unremarkable mental status examination is inconsistent with the marked limitations. Dr. Kouzes also did not provide an objective basis and/or narrative to explain and support the marked limitations." AR at 25. With respect to the mental status examination, the ALJ noted that plaintiff's "eye contact was good, he was cooperative, his thought processes were logical with normal thought content, he was oriented, his memory was within [normal] limits, and his concentration was good." AR at 25. The ALJ stated, "[p]resumably, Dr. Kouzes relied mostly on the claimant's subjective complaints while attempting to qualify for benefits." AR at 25.

As a threshold matter, although plaintiff performed well cognitively in terms of his orientation, fund of knowledge, concentration, and abstract thought, the Court does not agree with the ALJ's assessment that the mental status examination performed by Dr. Kouzes was entirely "unremarkable." As noted above, Dr. Kouzes noted that plaintiff displayed pressured speech, rambling, and for "amount" she indicated a "plus" sign. AR at 409. She also indicated that plaintiff's attitude and behavior were "irritable," his mood was "angry," and his affect was "labile." AR at 409-10. Finally, Dr. Kouzes noted that plaintiff's thought process and content were "grandiose." AR at 410. These findings bear on plaintiff's social functioning, which was the main area of impaired functioning found by Dr. Kouzes. This is significant because the ALJ did not include any limitation in plaintiff's ability to interact with coworkers or supervisors in the RFC assessment in this case. AR at 21.

The ALJ's statement that "Dr. Kouzes also did not provide an objective basis and/or narrative to explain and support the marked limitations" is also not accurate, when Dr. Kouzes' report is considered as a whole. In the portion of her assessment entitled "clinical findings,"

REPORT AND RECOMMENDATION - 13

Dr. Kouzes noted that plaintiff presented with "inflated self-esteem at several points [with] rapid somewhat pressured speech." AR at 407. She also noted that he was "agitated and/or irritated" and concluded "there was evidence of grandiosity of thinking." AR at 407. Dr. Kouzes thoroughly completed every portion of the DSHS form, which does not include space under each limitation to provide a narrative explanation. The ALJ's rejection of Dr. Kouzes' opinion for failing to include additional narrative explanation, especially in light of the ALJ's adoption of the medical consultant Dr. Bailey's report which contains less rationale than offered by Dr. Kouzes, is not specific and legitimate.

Finally, the ALJ does not cite any evidence to support her presumption that Dr. Kouzes relied more heavily on plaintiff's subjective complaints than her objective findings and clinical observations. As discussed in detail above, Dr. Kouzes documented her personal observations of plaintiff's symptoms and performed a thorough mental status exam that appears to support her assessed social limitations. AR at 407, 409-10. *See Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). On remand, the ALJ shall also re-evaluate Dr. Kouzes' opinion.

### B. On Remand, the ALJ Shall Also Re-Evaluate Plaintiff's Testimony

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR at 22. Because this case is being remanded for reconsideration of all the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded.

REPORT AND RECOMMENDATION - 14

After re-evaluating the medical evidence, the ALJ should reassess plaintiff's testimony, and provide clear and convincing reasons for rejecting his testimony should such a conclusion be warranted. On remand, the ALJ should also keep in mind that mental health symptoms and presentation fluctuate. The ALJ should take care not to "cherry pick" the record by citing only evidence that plaintiff performed normally on mental status examination while ignoring any "abnormal" findings or plaintiff's symptomatic presentation during medical appointments. The ALJ should also reevaluate plaintiff's RFC, and more thoroughly explain any social limitations.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **May 10, 2017**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 12, 2017**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

//

//

assigned District Judge acts on this Report and Recommendation.

DATED this 26th day of April, 2017.

/s/ James P. Donohue

JAMES P. DONOHUE
Chief United States Magistrate Judge